UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 3:04-cr-131 |
| v. | : | |
| | : | Judge Thomas M. Rose |
| CHRISTOPHER RODGERS, | : | |
| Defendant. | : | |

---

### ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 69)

---

This case is before the Court on the Motion for Compassionate Release (Doc. No. 69) (the "Motion"), filed by Christopher Rodgers ("Rodgers"). Rodgers is currently incarcerated at FCI [Federal Correctional Institution] Berlin in New Hampshire. (*See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited June 22, 2021).) He asks the Court for compassionate release from his term of imprisonment. More specifically, he asks that this Court grant him "a compassionate release and/or reduce [his] sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to COVID-19 pandemic concerns." (Doc. No. 69 at PageID 410.) For the reasons discussed below, the Court **DENIES** Rodgers' Motion.

### I.     BACKGROUND

On September 1, 2004, the United States of America (the "Government") filed a three-count criminal complaint against Rodgers. (Doc. No. 1.) On September 29, 2004, a federal grand jury returned a nine-count indictment including: one count of conspiracy to commit armed bank robbery under 18 U.S.C. § 371 and 18 U.S.C. § 2, four counts of armed bank robbery under 18 U.S.C. § 2113(a)–(d) and 18 U.S.C. § 2, and four counts of using a firearm during a crime of

1

violence under 18 U.S.C. § 924(c)(1)(A)(ii). (Doc. No. 13.) On September 2, 2005, Rodgers reached a Plea Agreement, under which he agreed to plead guilty to one count of armed bank robbery and one count of using a firearm during a crime of violence. (Doc. No. 41 at ¶ 1.) The Statement of Facts attached to the Plea Agreement, signed by Rodgers and his attorney, states, in relevant part:

> General Facts
>
> On or about July 18, 2002, **CHARLES RODGERS ("RODGERS")** and Brandon Pooler robbed the Huntington National Bank, located at 7690 Old Troy Pike in Huber Heights. In preparation for the bank robbery, **"RODGERS"** and Pooler had on the previous day, stolen two vehicles in the Dayton, Ohio area to be used during the bank robbery. … As Pooler waited in the parking lot, **"RODGERS"** disguised himself in a ski mask, pulled out a gun and pillowcase, and entered the bank. Once inside the bank, **"RODGERS"** approached the teller counter and at gunpoint, ordered the bank teller to place money from her teller drawer into the pillowcase he was carrying. In response, the teller placed approximately $8,996.00 into the pillowcase. **"RODGERS"** then fled the bank with the money, to the waiting car driven by Pooler.
>
> On or about August 29, 2002, **"RODGERS"** and another individual entered the Key Bank located at 11355 Princeton Pike, Springdale, Ohio. Both **"RODGERS"** and the other individual were disguised and carried semi-automatic pistols. While the other individual positioned himself in the lobby as a lookout, **"RODGERS"** approached the teller counter and at gunpoint demanded that the teller give him money. In response, the teller collected $13,056 in U.S. currency from her teller drawer and gave it to **"RODGERS"**. Both **"RODGERS"** and the other individual then fled from the bank to vehicles they had stolen prior to the bank robbery.
>
> On or about October 18, 2002, **"RODGERS"** and another individual entered the Key Bank located at 511 West National Road, Englewood, Ohio. Both **"RODGERS"** and the other individual were disguised and carried semi-automatic pistols. While the other individual positioned himself in the lobby as a lookout, **"RODGERS"** approached the teller counter and at gunpoint demanded that the teller give him money. In response, the teller collected $13,401 in U.S. currency from her teller drawer and gave it to **"RODGERS"**. Both **"RODGERS"** and the other individual then fled from the bank to vehicles they had stolen prior to the bank robbery.
>
> Facts – Counts 8 and 9
>
> On or about September 29, 2003, **"RODGERS"** and two other individuals robbed the Key Bank located at 11355 Princeton Pike, Springdale, Ohio. One of the

individuals, "robber #2", entered the Key Bank with **"RODGERS"**, while the third, "robber #3", remained in a getaway car. As **"RODGERS"** and the "robber #2" entered the bank, both disguised in masks and carrying handguns, they encountered a customer that was exiting the bank. "Robber #2", at gunpoint, forced the customer back into the bank, ordered her to sit in a lobby chair, and remained in the lobby area as a lookout. **"RODGERS"** approached the teller counter, and at gunpoint demanded money from the teller. In response, the teller placed approximately $39,259.00 in U.S. currency into a cloth bag that **"RODGERS"** individual [sic] was carrying. **"RODGERS"** and "Robbery #2" [sic] then fled from the bank and drove away with "Robbery #3" [sic] in stolen vehicle.

(Doc. No. 41 at PageID 280-81.) At sentencing, the Court imposed sentences of 60 months and 84 months—to be served consecutively—for the respective convictions on Counts 8 and 9 of the Indictment, followed by three years of supervised release with additional conditions, a $200 special assessment, and an order of restitution. (Doc. No. 47 at PageID 289–92.)

The Final Presentence Investigation Report ("PSI") regarding Rodgers provides additional information about the circumstances of the offenses and identifies several prior adult criminal convictions. (PSI ¶¶ 8–12, 48–54.) Rodgers' criminal history includes convictions for arson, receiving stolen property, and grand theft in 1994, resulting in three years of incarceration. (*Id.* at ¶¶ 48–50.) Just over three months after being released from that sentence, Rodgers was convicted for two counts of theft, followed by convictions for insurance fraud, receiving stolen property, illegal use of food stamps, filing a false report, and theft of personal property. (*Id.* at ¶¶ 51–54.) Those convictions took place within a 15-month timespan. (*Id.*) While on supervised release from those convictions, Rodgers was charged with felonious assault and his release revoked on August 22, 2003. (*Id.* at ¶ 56.) After posting bond, Rodgers was placed into electronically monitored home confinement at his mother's house, but arrested again on February 12, 2004 after cutting off the electronic monitoring bracelet and leaving the residence. (*Id.* at ¶¶ 56–57.) Rodgers was subsequently charged with violation of a temporary protection order when he made contact with his estranged wife on January 7, 2004. (*Id.* at ¶ 57.) The PSI also indicates that Rodgers accepted

responsibility for the offenses for which he is currently incarcerated and timely notified authorities of his intention to enter a guilty plea. (*Id.* at ¶ 35–36.)

Rodgers is now 45 years old and has an anticipated release date of October 18, 2022. (*See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited June 22, 2021).) However, Rodgers is scheduled to be released to a "halfway house" on November 3, 2021. (Doc. No. 72 at PageID 423.)

Rodgers filed the Motion on April 29, 2021. (Doc. No. 69.) His appointed counsel filed a Supplemental Motion in support on May 25, 2021. (Doc. No. 72.) The Government filed a Response to the Motion on June 11, 2021 and Defendant's counsel filed a reply on June 23, 2021. (Doc. Nos. 73, 74.) The matter is ripe for review and decision.[1]

## II. ANALYSIS

### A. Legal Standards

A district court has limited authority to modify a sentence. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020) ("[s]ince the Sentencing Reform Act of 1984, federal law has generally prohibited a district court from modifying a term of imprisonment once it has been imposed") (alterations adopted) (internal quotation marks omitted). "Generally speaking, once a

---

[1] Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted); *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) ("defendants now may bring reduction-of-sentence motions on their own once they exhaust any administrative remedies or wait 30 days from the date they request relief from the Bureau of Prisons"). Here, on March 9, 2021, Rodgers sent a request to the warden, pleading for a release to home confinement under the CARES Act. (Doc. No. 69 at PageID 417.) On March 23, 2021, the warden denied this request, finding Rodgers' status failed to meet the criteria that would warrant release. (*Id.* at PageID 417–18.)

4

court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides, in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[2]

The decision to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A) involves a three-step test, based on three substantive requirements. *United States v. Jones*, 980 F.3d 1098, 1106-08 (6th Cir. 2020); 18 U.S.C. § 3582(c)(1)(A)(i). At step one, a court must find that extraordinary and compelling reasons warrant a sentence reduction.[3] *Jones*, 980 F.3d at 1107-08. At step two, a court must find that such a reduction is consistent with <u>applicable</u> policy statements issued by the Sentencing Commission. *Id.* at 1108. At step three, a court must consider any applicable Section 3553(a) factors and, in its discretion, find that the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case. *Id.* A court may deny a compassionate release motion when any of the three substantive requirements is lacking and need not address the others. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). However, a court cannot grant such a motion unless the court addresses "all three steps." *Id.*

---

[2] Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *Ruffin*, 978 F.3d at 1003.
[3] "Or, alternatively, whether the defendant fulfills the requirements of § 3582(c)(1)(A)(ii)." *Jones*, 980 F.3d at 1108 n. 12.

5

Regarding the first step, "Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.'" *Ruffin*, 978 F.3d at 1004. Congress instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). But apart from this instruction, "Congress delegated to the Sentencing Commission the responsibility of describing what should be considered extraordinary and compelling reasons for sentencing reduction, including the criteria to be applied and a list of specific examples by promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A)." *Jones*, 980 F.3d at 1108-09 (alterations adopted) (internal quotation marks omitted). The Sentencing Commission's policy statement regarding compassionate release under Section 3582(c)(1)(A) resides in § 1B1.13 of the United States Sentencing Commission Guidelines Manual. *Id.* at 1109; U.S.S.G. § 1B1.13 ("Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)"). However, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018." *Jones*, 980 F.3d at 1109. Therefore, and for reasons more fully explained in *Jones*, the Sixth Circuit held that—until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act—district courts "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13" in cases where an incarcerated person files a motion for compassionate release.[4] *Id.* at 1109-11 ("[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full

---

[4] In *Elias*, while not mandating that future courts apply the two-part test used by the district court in that case, the Sixth Circuit held that the district court did not abuse its discretion in applying a "two-part test for deciding when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release: (1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Elias*, 984 F.3d at 520-21 (the district court did not abuse its discretion in relying on that two-part test; the district court properly considered the Centers for Disease Control and Prevention (CDC) guidance in effect at the time, a scientific journal, and information from the BOP concerning the number of reported COVID-19 cases at the prison). Additionally, the Sixth Circuit held that a district court may deny a motion for compassionate release if the defendant does not provide any records in the motion to support his or her claimed medical ailment(s). *Id.*

6

discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion"); *see also United States v. Harvey*, No. 20-1944, 2021 U.S. App. LEXIS 12652, 2021 WL 1661503, at *3 (6th Cir. Apr. 28, 2021) ("without an applicable policy statement, district courts have significant, though not unlimited, discretion to define extraordinary and compelling reasons for relief on their own initiative").

Regarding the second step, again, the Sentencing Commission's policy statement regarding compassionate release under 18 U.S.C. § 3582(c)(1)(A) resides in U.S.S.G. § 1B1.13. *Jones*, 980 F.3d at 1109. However, the Sixth Circuit held in *Jones* that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.*; *see also Elias*, 984 F.3d at 518 ("§ 1B1.13 is not applicable to inmate-filed compassionate-release motions"). Thus, U.S.S.G. § 1B1.13 currently is <u>not</u> an "applicable policy statement[] issued by the Sentencing Commission" in such cases. 18 U.S.C. § 3582(c)(1)(A); *Jones*, 980 F.3d at 1101, 1109. So now, "where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry," at least until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act. *Jones*, 980 F.3d at 1111.

Regarding the third step, "[d]istrict courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. The factors set forth in Section 3553(a) "consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public." *Ruffin*, 978 F.3d at 1005. More specifically, 18 U.S.C. § 3553(a) states:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes

set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such

> policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (B) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], is in effect on the date the defendant is sentenced[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions. *Jones*, 980 F.3d at 1115; *Ruffin*, 978 F.3d at 1008-09. Of course, not all of these items will be applicable or relevant (or known to the court) in all cases, and other items may be applicable or relevant. *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable").

Finally, "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory." *Jones*, 980 F.3d at 1106; *see also* 18 U.S.C. §

3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Ruffin*, 978 F.3d at 1005 (a "district court has substantial discretion" in deciding whether to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A)); *Elias*, 984 F.3d at 518 (a district court may reduce the term of imprisonment if all three of the substantive requirements are met, "but need not do so").

B. **Application**

Rodgers asks that the Court grant the Motion by either reducing his sentence to time served or granting a release to home confinement for the rest of his sentence. (Doc. No. 69 at PageID 412.) Rodgers argues the prison environment places him at a heightened risk to contract COVID-19 due to his obesity, which the CDC has designated as a risk factor. (*Id.* at PageID 411.) Rodgers indicates that his body mass index ("BMI") is 34.5 percent, and obesity is defined as a BMI over 30 percent. Rodgers also notes his record of model behavior while incarcerated, which includes maintaining consistent employment, participating in educational programming, and completing vocational classes. (*Id.*) Additionally, Rodgers has only one disciplinary incident (attempted use of mail for contraband tobacco products) throughout his 17 years of incarceration. (*Id.* at PageID 412.) Upon release, Rodgers says he would stay with family members and has an employment opportunity awaiting him at an auto body repair shop. (*Id.*)

The Court first addresses Rodgers' request that the Court allow him to complete the rest of his sentence under home confinement. This amounts to asking the Court to change the place where his sentence will be served (from FCI Berlin to his home), without reducing the term of his sentence. However, it is the Bureau of Prisons ("BOP"), not the courts, that has the authority to determine the place of a defendant's confinement. The CARES Act did not change this fact. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment …"); CARES Act, Pub. L. No. 116-136, at Div. B., Title II, § 120003(b)(2); *United States v.*

*Brummett*, No. 20-5626, 2020 U.S. App. LEXIS 26427, at *5, 2020 WL 5525871 (6th Cir. Aug. 19, 2020) ("to the extent that [the defendant prisoner] sought relief under the CARES Act, the district court correctly held that the authority to grant home confinement remains solely with the Attorney General and the BOP"); *see also United States v Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020) ("Section 3582(c)(1)(A) does not authorize the district court to order that a defendant serve his current sentence in home confinement," but, if the court "reduces a defendant's sentence under § 3582(c)(1)(A) to time served, [then] it can impose a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home"). Therefore, the request is denied.

The Court now considers Rodgers' request for compassionate release through reducing his term of imprisonment pursuant to Section 3582(c)(1)(A). (*See* Doc. No. 69.) Regarding step one, for the purposes of the Court's analysis, the Court will <u>assume</u>—without deciding—that Rodgers has demonstrated that suffering from his stated medical ailments during the current COVID-19 pandemic presents an extraordinary and compelling reason for reducing the term of imprisonment.[5] Regarding step two, given that Rodgers (an incarcerated person) filed the Motion, the Court "may skip"—and does skip—this step, in accordance with the Sixth Circuit's *Jones* decision. *Jones*, 980 F.3d at 1111.

However, that does not end the Court's inquiry. There is still the third step: consideration of any applicable Section 3553(a) factors and determination of whether, in the Court's discretion,

---

[5] The Court emphasizes it has <u>not</u> actually found that any circumstance (separately or combined) alleged by Rodgers qualifies as an "extraordinary and compelling reason[] [that] warrant[s] a reduction" of his sentence. 18 U.S.C § 3582(c)(1)(A)(i). As shown herein, the Court need not actually conduct that analysis to decide the Motion. *See, e.g., Jones*, 980 F.3d at 1108 (affirming district court's decision, which had "assumed for the sake of argument that extraordinary and compelling reasons existed" to reduce the defendant's term of imprisonment, proceeded to weigh several § 3553(a) factors, and then denied the motion for compassionate release). Here, the record is entirely devoid of any medical documentation of Rodgers' obesity. Regardless, the Court will assume the condition is existent.

the reduction is warranted in whole or in part under the particular circumstances of this case. *Jones*, 980 F.3d at 1108; 18 U.S.C. § 3582(c)(1)(A)(i); *see also Ruffin*, 978 F.3d at 1005 ("[e]ven if [the first two requirements] are met, … a district court may still deny relief if it finds that the applicable § 3553(a) factors do not justify it") (internal quotation marks omitted).

The Court has considered the Section 3553(a) factors to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i). This includes Rodgers' criminal history and characteristics, such as his asserted behavior in prison, and educational or vocational training while incarcerated. *See* 18 U.S.C. § 3553(a)(1). Rodgers also accepted responsibility for his actions. Further, the Court acknowledges Rodgers' alleged underlying health issue during the challenging conditions posed by the COVID-19 pandemic. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(D).

Yet, the "nature and circumstances of the offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1). The offenses for which Rodgers was charged and pleaded guilty are considered "extremely serious" and weigh heavily against granting release. *See United States v. Jones*, No. 2:95-cr-20, 2021 WL 836933, at *3 (S.D. Ohio Mar. 5, 2021) (finding armed robbery of a bank to be a serious crime in denying motion for compassionate release); *see also United States v. Blewitt*, No. 06-20585, 2021 WL 289552, at *5 (E.D. Mich. Jan. 28, 2021) (bank robbery is a serious felony). Further, Rodgers' "history and circumstances" caution against release. Rodgers has an extensive record of criminal activity, including a history of illegal acts after being released from incarceration. In the most recent instance, Rodgers, while assigned to home confinement, forcibly removed his electronic monitoring bracelet and violated a temporary restraining order against his estranged wife in 2004. (PSI ¶ 56–57.) Additionally, Rodgers has a lengthy criminal record involving theft, including multiple counts of grand theft in 1994. (*Id.* at ¶ 49–50.) Less than four months after being released from incarceration for that offense, Rodgers was re-imprisoned in

1997 for multiple counts of property theft. (*Id.* at ¶ 51–54.) Rodgers then violated his supervised release in 2001, committing another property theft. (*Id.* at ¶ 55.) Taken into consideration with the nature of the present offense, this criminal history weighs against release. *See* 18 U.S.C. § 3553(a)(1).

In this instance, the § 3553(a) factors do not favor early release. The Court acknowledges that Rodgers has served a majority of his original 12-year sentence. *See United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) (acknowledging courts may consider time served when evaluating such motions). Additionally, the Court recognizes Rodgers' argument under *Pepper v. United States* that courts must look to an offender's postsentencing conduct to glean the most "up-to-date picture" of that offender's character. 562 U.S. 476, 492 (2011). However, *Pepper* also clarifies that the "overarching duty" of a court is to "impose a sentence sufficient . . . to serve the purposes of sentencing." *Pepper*, 562 U.S. at 493. Reduction of a sentence even now would risk "minimiz[ing] the severity of his offense." *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020). Further, sentence reduction could put the public at risk of further crimes from Rodgers and detract from providing him the most effective manner of correctional treatment, since he is scheduled to be released into a "halfway house" on November 3, 2021. (Doc. No. 69 at PageID 412.) The Court does commend Rodgers for taking advantage of educational and vocational opportunities while incarcerated. (*Id.*)

Having considered the factors set forth in Section 3533(a) to the extent they are applicable, the Court finds that the requested reduction in term of imprisonment is not warranted. Thus, even if steps one and two authorized the requested reduction, the Court finds that consideration of the applicable Section 3553(a) factors calls for denial of the Motion for Compassionate Release. *Jones*, 980 F.3d at 1102 (affirming decision to deny motion for compassionate release where "the

district court found for the sake of argument that an extraordinary and compelling circumstance existed in [defendant's] case but that the § 3553(a) factors counseled against granting compassionate release"); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (affirming denial of a compassionate release motion where "the District Court reasonably concluded that several of the § 3553(a) factors—including … the need to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence—counsel against compassionate release …").

### III. CONCLUSION

Although the Court recognizes Rodgers' asserted medical ailments and is sympathetic to his arguments about the fear of contracting COVID-19, the circumstances here do not warrant a reduction in the term of imprisonment pursuant to Section 3582(c)(1)(A).[6]  For the reasons stated above, the Court **DENIES** the Motion for Compassionate Release (Doc. No. 69).[7]

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, July 8, 2021.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[6] The Court acknowledges the Defendant's request for an Evidentiary/Oral Hearing on this matter. (Doc. No. 72 at PageID 431; Doc. No. 74 at PageID 442.) The sole reason provided for such a hearing is to demonstrate Rodgers is no longer a danger to society. (Doc. No. 74 at PageID 442.) The Court, however, does not find a hearing necessary to make this determination. The Court's determination is based on a multitude of factors, beyond just the threat posed to society. Further, the supplemental motion includes an apparent error, misnaming the defendant as "Evans." (Doc. No. 72 at PageID 431.) The request for a hearing is denied.

[7] The Court acknowledges the valuable contribution and assistance of judicial intern Noah Brown in drafting this order.